IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRINITY BAPTIST CHURCH aka ) <br> TRINITY SOUTHERN BAPTIST CHURCH ) <br> aks PROVIDENCE CHURCH, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v.  ) <br>  ) <br> GUIDEONE ELITE INSURANCE ) <br> COMPANY, *et al.*, ) <br>  ) <br> Defendants. ) | Case No.  CIV-06-1201-D |

**O R D E R**

Before the Court is Defendant GuideOne Elite Insurance Company's Motion for Partial Summary Adjudication [Doc. No. 132].[1] Despite the caption, Defendant seeks a determination as a matter of law  pursuant to Fed. R. Civ. P. 56 that Plaintiff's only remaining claim – a tort claim of insurer's bad faith – is barred by the statute of limitations.[2] Plaintiff has opposed the motion, and Defendant has filed a reply brief.  The Motion is thus at issue.

By its First Amended Complaint, Plaintiff asserts a bad faith claim arising from Defendant's handling of an insurance claim for a loss of property that occurred on May 8, 2003.[3] This action originated in state court with a petition filed on Plaintiff's behalf by its pastor, Ed McCreary, on April 5, 2005.  Defendant was not served with a copy of the petition until August 11, 2006.  Plaintiff

---

[1] All references to"Defendant" in this Order shall mean GuideOne Elite Insurance Company.

[2] Alternatively, Defendant seeks a determination that the bad faith claim lacks factual support to the extent it involves allegations Defendant misled Plaintiff concerning Defendant's relationship with GuideOne Taylor Ball Construction Services Company.

[3] A second fraud claim was previously dismissed.  *See* Order 4/11/07 [Doc. No. 39].

retained counsel who entered their appearances in early August, 2006. Counsel filed an amended petition on August 25, 2006, and summons was against served on Defendant. The case was removed to federal court on October 30, 2006. Plaintiff filed the First Amended Complaint in this Court on February 26, 2007.[4]

By its Motion, Defendant seeks a determination of an issue previously raised under Fed. R. Civ. P. 12(b)(6), namely, whether Plaintiff's tort claim is time-barred by the applicable two-year statute of limitations, Okla. Stat. tit. 12, § 95(A)(3). This time-bar defense rests on two propositions: (1) the original petition was ineffective because Plaintiff, a corporation, could appear only through counsel and the petition was not signed by an attorney; and (2) all of the bad faith conduct of which Plaintiff complains occurred before August 25, 2004, which is the date two years before the amended petition was filed by counsel.

**Standard of Decision**

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[4] These procedural facts are largely uncontested. Nevertheless, the Court has also reviewed the court docket from the Cleveland County, Oklahoma case, No. CJ-2005-563, available at www.oscn.net.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672.

## Statement of Undisputed Facts[5]

Plaintiff is a corporation. Plaintiff's church building was struck by a tornado on May 8, 2003, while insured by Defendant. During the next two years, Plaintiff consulted seven attorneys seeking legal advice regarding its insurance claim and its legal options if litigation became necessary. Plaintiff first contacted attorneys at Goolsby Olson & Proctor, P.C. in July, 2003, in anticipation of receiving an unsatisfactory settlement offer from Defendant. In September, 2003, Plaintiff decided to hire this firm for representation regarding a settlement, if necessary, but the firm was never hired. Also in July, 2003, the pastor, Mr. McCreary, filed a request for assistance on Plaintiff's behalf with the Oklahoma Insurance Commission.

On June 8, 2004, Plaintiff retained a licensed public adjuster, Ernie Brendle, to assist with its insurance claim. Mr. Brendle was retained to document and negotiate a settlement of the claim or to document and obtain a firm denial so that litigation could be pursued. Mr. Brendle

---

[5] These facts include both undisputed facts stated by Defendant in its supporting brief and additional facts stated by Plaintiff in its response brief, which are undisputed by Defendant in its reply.

recommended the negotiation of a compromised settlement for payment of the policy limits. On July 6, 2004, Plaintiff also contacted an attorney who advises charitable organizations and small businesses, James Lockhart, regarding its legal options, and he offered to recommend an attorney if Plaintiff decided to pursue litigation.

Beginning in January, 2005, and continuing until March, 2005, Mr. McCreary had numerous conversations with attorneys at Nix & McIntyre, L.L.P. regarding possible litigation against Defendant. On March 9, 2005, Plaintiff decided to hire the firm to file suit if Mr. Brendle could not reach a favorable settlement. On March 10, 2005, Mr. Brendle received a settlement offer from Defendant's representative, Norde Battle, which Plaintiff rejected. On March 15, 2005, Plaintiff's representatives met with Glendell Nix and another member of his firm. On the same day, however, Mr. Brendle reported to Plaintiff that Defendant planned to invoke the appraisal process to reach a final settlement and Defendant might pay an undisputed amount. On March 28, 2005, Defendant informed Plaintiff by letter to Mr. Brendle that it was paying the remaining policy limit and invoking the appraisal process to resolve any additional amount due under "Ordinance or Law" coverage for code upgrade items in Plaintiff's new church building.

On March 22, 2005, Plaintiff's representatives met with an attorney recommended by Mr. Brendle for advice and direction regarding its insurance claim. The attorney, Camp Bonds, agreed to prepare a draft petition without compensation. The next day, Mr. Bonds sent the document to Mr. McCreary with additional information about the statute of limitations. Mr. Bonds informed Mr. McCreary about the possibility of filing a lawsuit in state court without serving Defendant, and then later dismissing the case without prejudice and refiling in federal court within the time set by the savings statute. Mr. Bonds confirmed in his letter that he had not been employed to represent Plaintiff, and he stated "you will continue pro se or hire an attorney some time in the future." *See*

4

Pl.'s Ex. 4 [Doc. 140-5]. By affidavit, Mr. McCreary states he understood from their discussion that he could file the petition for Plaintiff.

On April 5, 2005, a petition like the one drafted by Mr. Bonds was filed in the District Court of Cleveland County, Oklahoma, signed by Mr. McCreary on behalf of Plaintiff. No defendant was served or otherwise notified of the action.[6] On May 12, 2006, the state court issued a notice directing Plaintiff to show cause why the case should not be dismissed. Mr. McCreary filed a written response on Plaintiff's behalf in which he stated that the lawsuit was filed to protect the statute of limitations but the defendants were not served "because the parties are presently involved in non-binding arbitration." *See* Def.'s Ex. 30 [Doc. 132-32]. Mr. McCreary used the wrong legal term; he was referring to the appraisal process, which was not concluded until July, 2006.[7] Mr. McCreary also appeared in court on May 31, 2006. On that date, the presiding judge issued an order granting Plaintiff "leave to obtain legal service and notice" to the defendants by August 4, 2006. *See* Def.'s Ex. 31 [Doc. 132-33]. Mr. McCreary states by affidavit that the judge told him to get a lawyer. There is no indication the presiding judge raised at that time any issue regarding the status of the *pro se* petition.

In June, 2006, Mr. McCreary was referred to Plaintiff's present attorneys. He met with them for the first time on June 19, 2006. Plaintiff's counsel obtained summonses in early August, 2006. Service was attempted August 3, 2006, but service of Defendant was not completed until August 11, 2006. Plaintiff explains that the named defendant, "GuideOne Insurance Company," could not be served through the Insurance Commissioner so a summons for "GuideOne Elite Insurance

---

[6] The petition named two defendants who are not parties to this case, including GuideOne Taylor Ball Construction Services Company.

[7] Mr. Brendle continued to negotiate on behalf of Plaintiff throughout the appraisal process.

Company" was issued on August 9, 2006. Before Defendant's answer was due, another defendant moved to dismiss the petition as defective because it was not signed by an attorney. On August 25, 2006, Plaintiff, through counsel, dismissed the moving defendant and filed the First Amended Petition. Defendant answered on October 10, 2006, and removed the action to this Court on October 31, 2006.

## Discussion

**A.     Timeliness Issues**

"A federal court sitting in diversity applies state law for statute of limitations purposes" and "state law determines when an action is commenced for statute of limitations purposes." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 109-10 (1945), and *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980)). Thus Oklahoma law supplies the rules of decision for the time-bar issues presented.

The Court has previously determined that the Oklahoma Supreme Court would reject the view that a pleading filed on behalf of a corporation by a non-attorney is a legal nullity, and would instead adopt a rule that such a pleading has a curable defect that may be remedied under appropriate circumstances. *See* Order 5/23/07 [Doc. No. 48] at 6-7. The curable defect approach described in *Save Our Creeks v. City of Brooklyn Park*, 699 N.W.2d 307 (Minn. 2005), is discussed further below.

Accepting the Court's ruling as law of the case, Defendant contends that Plaintiff has not satisfied the criteria of *Save Our Creeks* for curing the defect in its initial pleading.[8] Plaintiff, of

---

[8] Defendant also states its disagreement with the prior ruling and argues that the Oklahoma Supreme Court would adopt *Massongill v. McDevitt*, 828 P.2d 438 (Okla. Civ. App. 1989). *See* Def.'s Mot. Summ. J. [Doc. 132] at 12-13 n.1. However, the court in *Massongill* did not decide the legal effect of a *pro se* corporate pleading. The corporation in that case was attempting to appeal an adverse judgment without

6

course, disagrees with these contentions. Plaintiff also argues that the effectiveness of the original petition is immaterial to the timeliness issue because the statute of limitations was tolled during the appraisal process and settlement negotiations, particularly without any statutorily required notice of the limitations period. *See* Okla. Stat. tit. 36, § 1250.7(E).

### 1. Mandatory Appraisement

Plaintiff relies on *Massey v. Farmers Ins. Co.*, 837 P.2d 880, 883 (Okla. 1992), for the proposition that "when one party demands that the appraisal process begin, the other party is compelled to submit to it whether they want to or not."[9] Plaintiff also relies on the principle that "appraisement becomes a condition precedent to suit when the insurer makes demand therefor." *See Concordia Fire Ins. Co. v. Barkett*, 236 P. 890, 891 (Okla. 1925). Based on these principles, Plaintiff argues that "when an appraisal provision is invoked, the statute of limitations is tolled while the appraisal process is ongoing." *See* Pl.'s Resp. Br. [Doc. 140] at 18 (citing *Closser v. Pennsylvania Mut. Firs Ins. Co.*, 457 A.2d 1081, 1087 (Del. 1983)).

There are recognized exceptions to the general rules cited by Plaintiff. In *Concordia*, for example, the Oklahoma Supreme Court held that a denial of liability waived the insurer's right to invoke an appraisal provision of an insurance policy. Further, the court held in *Fidelity-Phenix Fire Ins. Co. v. Penick*, 401 P.2d 514 (Okla. 1965), that a mandatory appraisal clause "does not constitute a condition precedent for maintaining an action on a policy where the insurer, in making demand for an appraisal, reserves the right to litigate the question of liability." *Massey*, 837 P.2d at 882; *see*

---

counsel; no attorney appeared on its behalf to cure the defective brief filed by a non-lawyer.

[9] In *Massey*, the Oklahoma Supreme Court was commenting on the mandatory language of an appraisal provision required by Okla. Stat. tit. 36, § 4803, in considering whether an appraisal award should be binding on a party who did not initiate the appraisal process.

*Fidelity-Phenix*, 401 P.2d at 520.  In *Fidelity-Phenix*, the insurer made a demand that the insured comply with the appraisal process but, in the demand letter, reserved the question of liability for later decision.  The court concluded that "[s]uch reservation waived the clause as a condition precedent" to suit.  *See Fidelity-Phenix*, 401 P.2d at 520.

In this case, the policy contains an appraisal clause with a similar reservation: "If there is an appraisal, we will still retain our right to deny the claim."  *See* Pl.'s Ex. 2 [Doc. 140-3] at 1. Thus, the Court concludes that Plaintiff had no obligation to await the conclusion of the appraisal process to file suit under the policy.  Accordingly, because Plaintiff was not legally prevented from filing suit, the pendency of the appraisal process did not toll the running of the statute of limitations.

### 2.     **Statutory Notice**

Plaintiff contends the statute of limitations was tolled, or Defendant has waived or is estopped to assert a limitations defense, because Defendant failed to comply with a statue that requires insurers to give advance written notice of the expiration of a time limit.  The statute provides:

> Insurers shall not continue or delay negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney, for a length of time which causes the claimant's rights to be affected by a statute of limitations, or a policy or contract time limit, without giving the claimant written notice that the time limit is expiring and may affect the claimant's rights.  Such notice shall be given to first party claimants thirty (30) days, and to third party claimants sixty (60) days, before the date on which such time limit may expire.

Okla. Stat. tit. 36, § 1250.7(E).  Plaintiff provides no legal authority for the proposition that this statute applies to a tort claim, as opposed to a contract claim for benefits under the policy.  Upon consideration, the Court finds the statute does not apply to Plaintiff's bad faith claim.

This statute is contained in the Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, §§1250.1-1250.16.  The Act serves to prevent unfair business practices by authorizing the Insurance

8

Commissioner to enforce its provisions through administrative actions against insurers. *See Walker v. Chouteau Lime Co., Inc.*, 849 P.2d 1085, 1087 (Okla. 1993). A "claimant" is defined as a person who is asserting a claim directly (first party claimant) or indirectly (third party claimant) under an insurance policy or an insurance contract. *See* Okla. Stat. tit. 36, § 1250.2. The provisions of the Act apply to "claims arising under an insurance policy or insurance contract issued by an insurer." *Id*. § 1250.3. The Court finds no indication in the Act that it was intended to apply to tort claims or rights of recovery that may exist outside the insurance policy or contract.

Therefore, because the statute does not apply to Plaintiff's bad faith claim, Defendant's failure to give a notice otherwise required by the statute provides no basis for tolling the limitations period or precluding Defendant from asserting a limitations defense to a bad faith claim.

**3.      Equitable Tolling**

Plaintiff also seems to argue that the limitations period should be equitably tolled because Defendant "continued to negotiate with [Plaintiff] well past the date(s) upon which it now claims the statute of limitations expired." *See* Pl.'s Resp. Br. [Doc. 140] at 22. Like the issue of notice, discussed above, Plaintiff presents no authority for the proposition that continued negotiations regarding an insurance claim operate to toll, or constitute a waiver of, the statute of limitations applicable to a tort action, as opposed to an action on the contract. The Oklahoma Supreme Court has summarized the law governing tort actions as follows:

> A fact question as to whether a defendant is estopped from interposing the defense of a time bar is generally raised by a plaintiff's allegations that the defendant had made (a) some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period, or (b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or (c) any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry, which induces one to refrain from timely bringing an action.

9

*Jarvis v. City of Stillwater*, 732 P.2d 470, 472-73 (Okla. 1987) (footnotes omitted). Moreover, even in actions seeking to recover under an insurance policy, the Oklahoma Supreme Court has relied on evidence of conduct by an insurer that may have lulled the insured into delaying the commencement of an action to find a triable issue regarding tolling or waiver. *See Oklahoma Farm Bureau Mut. Ins. Co. v. Lay*, 389 P.2d 506, 508 (Okla. 1965). Plaintiff does not identify any conduct by Defendant, aside from ongoing negotiations generally, that lulled it into inaction. In fact, Plaintiff did not delay but made a timely court filing under the policy; it simply did so without hiring counsel. Plaintiff also has not provided facts or evidence to show an express and repeated admission of liability with promises of payment or settlement. Plaintiff does not allege false or misleading conduct or an affirmative act of concealment. Accordingly, the Court finds that Plaintiff has failed to demonstrate a triable issue of fact regarding equitable tolling.

   **4.  Effectiveness of the Original Petition**

In *Save Our Creeks*, the Supreme Court of Minnesota adopted a "curable defect" approach described as follows:

> [A]n amendment to add an attorney's signature to a corporation's complaint should be permitted when the following four elements are met: (1) the corporation acts without knowledge that its action was improper; (2) upon notice, the corporation diligently corrects its mistake by obtaining counsel, but in no event may it appear in court without an attorney; (3) the nonattorney's participation in the action is minimal; and (4) the nonattorney's participation results in no prejudice to the opposing party. We emphasize that as to the first prong, if a corporation knows or should know that its action is improper, amendment will not be allowed.

*Id.* at 311. The court in *Save Our Creeks* also held that the amendment, if permitted, would relate back to the date of the original pleading under a procedural rule similar to Fed. R. Civ. P. 15(c) and Okla. Stat. tit. 12, § 2015(C). *Id.*

Applying the four-factor test of *Save Our Creeks* to the undisputed facts of this case, Defendant asserts Plaintiff knew, or should have known through its numerous consultations with attorneys, that it needed a lawyer to file a lawsuit. Defendant also asserts Plaintiff did not promptly correct its mistake because counsel did not sign and file a pleading for almost 90 days after Plaintiff was directed to hire an attorney and 60 days after it met with, and presumably hired, counsel. Defendant argues that Mr. McCreary's participation in the case was significant and Defendant was prejudiced by its lack of notice of this action, which was pending throughout the appraisal process. In response, Plaintiff notes that some courts have found a defective petition to be cured without applying the test of *Save Our Creeks*. Plaintiff also argues that all four criteria are met in this case.

Upon consideration of the factors identified in *Save Our Creeks*, the Court finds that the defect in Plaintiff's original petition was cured by the filing of the amended petition by counsel. Contrary to Defendant's argument, there is no evidence Plaintiff actually knew it could not file a petition without an attorney. Plaintiff has presented facts and evidence to show it was specifically advised by Mr. Bonds that it <u>could</u> file a petition signed by Mr. McCreary. Mr. Bonds' statement in his letter to Mr. McCreary that "you will continue pro se" could reasonably be understood to convey this message. The Court is unpersuaded by Defendant's argument that "[w]hether the pastor received bad legal advice from an attorney is immaterial to what Plaintiff should have known." *See* Def.'s Reply Br. [Doc. 149] at 3 (emphasis omitted). A layman could not reasonably be expected to recognize bad legal advice. The Court instead finds Plaintiff acted without knowledge, actual or implied, that filing a lawsuit without an attorney was improper.

The Court also finds Plaintiff acted diligently to correct its mistake when Mr. McCreary was informed by the state court judge that it needed an attorney.[10] Within a month, Plaintiff met with its present attorneys, and within the time limit set by the presiding judge, counsel appeared in the case on Plaintiff's behalf. Before any defendant had answered the petition, Plaintiff filed an amended petition signed by counsel. Mr. McCreary's participation in the lawsuit was minimal. He merely filed the petition and responded in writing and in person to the state court's show cause order. He did not obtain the issuance of summonses or take any further action in the case. Finally, the Court finds no prejudice to Defendant from McCreary's involvement. The only prejudice identified by Defendant is its continued participation in the appraisal process, and continued settlement discussions with Mr. Brendle, while it was unaware of a pending lawsuit and a need for legal counsel. However, this prejudice arises from a lack of notice of the lawsuit and not from the fact the suit was filed by Mr. McCreary. In short, assuming the structured analysis of *Save Our Creeks* is appropriate to the finding of a curable defect, the Court finds Plaintiff cured the defect in its original petition when it retained counsel and filed an amended pleading.

The question remains whether the First Amended Petition filed on August 25, 2006, relates back to the date of filing the defective petition for purposes of the statute of limitations. Under Oklahoma law, the relation back of amendments is governed by Okla. Stat. tit. 12, § 2015(C). "Section 2015(C) is virtually identical to Rule 15(c) of the Federal Rules of Civil Procedure, and [the Oklahoma Supreme Court has] adopted the construction placed upon it by the federal courts."

---

[10] The Court notes there is no indication in the record that the presiding state court judge raised any issue regarding the status of the original petition.

*Pan v. Bane*, 141 P.3d 555, 559 (Okla. 2006).[11] As pertinent here, the Oklahoma Supreme Court views a critical requirement to be timely notice of the action, which "has been characterized as the 'linchpin' of the relation back doctrine." *Id*. at 560 (citing *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)).[12] This requirement appears in the third part of the statute, which states that relation-back may occur when:

> The amendment changes the party or the naming of the party against whom a claim is asserted if [the claim arises from the same occurrence] and, within the period provided by subsection I of Section 2004 of this title for service of the summons and petition, the party to be brought in by amendment:
>
> a. Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and
>
> b. Knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Okla. Stat. tit. 12, § 2015(C)(3). Under this provision, "[n]otice of the pendency of the action may be actual or constructive, formal or informal, but it must be received by the party to be added within the requisite time period <u>and</u> it must be such that the new party will not be prejudiced in maintaining a defense." *Pan*, 141 P.3d at 560 (emphasis added). In Oklahoma, the required time period is "one hundred eighty (180) days after the filing of the petition" unless the plaintiff can "show good cause why such service was not made within that period." *See* Okla. Stat. tit. 12, § 2004(I). Although Oklahoma courts have not considered the issue, federal courts have held that an extended service period may be used as the notice period for relation-back purposes. *See McGuire v. Turnbo*, 137

---

[11] The federal rule was subsequently amended in 2007, but the amendments were merely technical and not substantive.

[12] The Oklahoma statute, like Rule 15, was amended to change the result of *Schiavone* by altering the time period within which notice must occur, but the requirement of timely notice was not changed.

F.3d 321, 325 (5th Cir. 1998) (where notice was received outside 120-day time limit for federal service but within extended period granted by the district judge, amended complaint related back).

In this case, the amended petition added the signature of an attorney, omitted two original defendants, and renamed the defendant insurer. In place of "GuideOne Insurance Company aka GuideOne Mutual Insurance Company aka GuideOne Elite Insurance Company aka GuideOne Casualty Insurance Company,"[13] the First Amended Petition substituted as the named defendant: "GuideOne Elite Insurance Company." This entity was first served through the Oklahoma Insurance Commissioner on August 11, 2006, which is outside both the 180-day time limit set by statute and the extended time limit ordered by the state court judge. It is undisputed Defendant had no prior notice of this action, and thus a critical requirement for relation-back of the First Amended Petition is not met. Regardless whether any prejudice is shown, no timely notice of the action was received so relation-back is not authorized. *See Schiavone*, 477 U.S. at 29 ("Relation back is dependent upon four factors, all of which must be satisfied: . . . (4) the second and third requirements must have been fulfilled within the prescribed [time] period.")[14]

Therefore, the Court finds that the First Amended Petition did not relate back to the original filing of the *pro se* petition. Accordingly, the action was commenced against Defendant for limitations purposes with the filing of the First Amended Petition on August 25, 2006.

---

[13] In the First Amended Complaint filed after the removal to federal court, these entities were listed as separate defendants, except GuideOne Casualty Insurance Company was omitted. The other defendants, GuideOne Insurance and GuideOne Mutual Insurance Company, were then served with process.

[14] As stated above, *see supra* note 12, post-*Schiavone* amendments to the rule did not alter the requirement of timely notice. More importantly here, the Oklahoma Supreme Court views the element of timely notice as the "linchpin" of the relation-back doctrine. "The requirement of timely notice serves as the yardstick used for evaluating whether or not amending the complaint will cause the new defendant to suffer prejudice if he or she is forced to defend the case on the merits." *Pan*, 141 P.3d at 560 (internal quotation omitted).

**B.     Timeliness of Plaintiff's Action**

The two-year limitations clock began to run when Plaintiff's claim of insurer's bad faith accrued. "A cause of action in tort arose when the insurer breached the implied duty to deal fairly and in good faith with its insured." *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 70 (Okla. 1983); *see also Lee v. Phillips & Lomax Agency, Inc.*, 11 P.3d 632, 634 (Okla. 2000) (limitations period begins to run at "the point in time a plaintiff can successfully prove the elements of a tort claim"). Here, Plaintiff claims Defendant "breached its duty of good faith and fair dealing in the following ways:"

a.   Withholding payment of policy benefits while knowing that Plaintiff's claim for those benefits was valid;

b.   By unreasonably delaying payment of some benefits and denying Plaintiff's claim for certain benefits without a reasonable basis;

c.   By refusing to pay Plaintiff's claim for reasons contrary to express provisions of the law;

d.   By intentionally and recklessly misapplying provisions of the policy;

e.   By using the fact of the unequal wealth and bargaining positions of parties to take advantage of Plaintiff for economic gain for GuideOne;

f.   By failing to properly and promptly investigate Plaintiff's claim for benefits;

g.   By failing to properly evaluate the investigation that was done on Plaintiff's claim for benefits;

h.   By failing to adopt and implement reasonable standards for the prompt investigation in handling of claims arising under its policies to include Plaintiff's claim;

i.   By not attempting, in good faith, to effectuate a prompt, fair settlement for the Plaintiff's claim once liability had become reasonably clear;

j.   By attempting to take advantage of Plaintiff's precarious financial position to force Plaintiff into an unfavorable settlement of the claim;

> k. By attempting to mislead Plaintiff into accepting Taylor Ball Construction as the contractor to rebuild the church without fully disclosing and explaining the obvious conflict of interest inherent in such an arrangement; and
>
> l. By unreasonably delaying the investigation and evaluation of this claim.

*See* First Am. Compl. [Doc. No. 19] at 2-3, ¶ 11.

Although the precise dates of these alleged acts or omissions are unclear, Defendant asserts and presents facts to show that all occurred before August 25, 2004. Defendant contends Plaintiff knew all the facts on which its claims are based by the time it hired Mr. Brendle in June, 2004. Thus Defendant contends the two-year limitations period expired before the action against it was properly commenced on August 25, 2006.

Plaintiff admits the facts on which Defendant relies to show that Plaintiff was aware of alleged bad faith conduct in 2003. Plaintiff contends, however, "there are numerous factual controversies as to what [Defendant] did and when a cause of action for bad faith accrued, precluding judgment as a matter of law on that issue." *See* Pl.s' Resp. Br. at 18 n.6. Plaintiff points out that Defendant delayed payment for replacement cost coverage until April, 2005, and Defendant is "still denying coverage for most of the agreed upon appraised amount for 'ordinance or law' coverage." *See id*. at 19 n.6. Plaintiff relies on the proposition that a finding of bad faith depends on "the entire course of conduct between the parties." *See id*. (quoting *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 917 (Okla. 1982)).

With one exception, the Court is not persuaded by Plaintiff's arguments under the summary judgment record presented for decision. The facts identified in Plaintiff's response regarding the hiring of GuideOne Taylor Ball Construction Services occurred in 2003. Similarly, according to Plaintiff's authorized representative and insurance adjuster, Mr. Brendle, Defendant had breached its duty to timely and fairly investigate and pay Plaintiff's claim in full – including both the policy

limit and the additional "ordinance and law" coverage – before he was hired to negotiate a settlement on Plaintiff's behalf.  *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 140-6] at 4-5 (Bates GOE00369-70) (after stating his view that code enforcement costs should have been included in the total replacement cost when calculating the actual cash value payment, Brendle concluded: "[Defendant] has under paid this claim and has denied policy benefits to this Insured since the Actual Cash [Value] payment has been made in 2003."); *see also* Def.'s Mot. Summ. J., Ex. 13 [Doc. No. 132-15], Brendle Dep. 281:11-15 (he concluded one year after the loss that Defendant had not properly investigated or paid the claim and had delayed payment); *Id*. 401:4-6 (Plaintiff was entitled to the policy limits in 2004 when he began working on the claim).  Further, Mr. Brendle's position on Plaintiff's behalf was that the appraisal process was unnecessary to a determination of the "ordinance and law" coverage.  *See* Pl.'s Resp. Br., Ex. 5 [Doc. No. 140-6] at 4 (Bates GOE00369).

It is unclear, however, when Mr. Brendle reached a conclusion that the full amount of the extended "ordinance and law" or code enforcement coverage was owed; the statement appears in a communication dated March 17, 2005.  The engagement letter signed on June 8, 2004, lists this extended coverage as "anticipated."  *See* Def.'s Reply Br., Ex. 2 [Doc. No. 149-3] at 2.  Defendant acknowledges in its reply brief that, when Plaintiff filed suit, the construction of the new church building "was not far enough advanced for Plaintiff to comply with the terms of the code upgrade provisions."  *See* Def.s' Reply Br. [Doc. No. 149] at 10.  Thus, with respect to the policy's additional "ordinance or law" coverage, the Court finds that Plaintiff has demonstrated a genuine factual

dispute regarding whether a bad faith claim based on Defendant's alleged delay in payment or failure to pay this coverage benefit accrued before August 25, 2004.[15]

Therefore, the Court finds that Defendant is entitled to summary judgment on the basis of its defense that Plaintiff's bad faith claim asserted in the First Amended Complaint is time-barred, except to the extent Plaintiff's claim is based on Defendant's alleged bad faith conduct with regard to "ordinance and law" coverage due under the policy.

## Conclusion

Therefore, GuideOne Elite Insurance Company's Motion for Partial Summary Adjudication [Doc. No. 132] is GRANTED in part and DENIED in part. Defendant is entitled to a determination as a matter of law that Plaintiff's bad faith claim is time-barred as to all conduct by which Defendant allegedly breached its duty of good faith and fair dealing *except* conduct with respect to the additional "ordinance or law" coverage allegedly due under the policy. Subject to other summary judgment rulings, only this limited bad faith claim remains for trial.

IT IS SO ORDERED this 28th day of August, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[15] The scope of "ordinance or law" coverage remains in dispute and is the subject of Plaintiff's Motion for Partial Summary Adjudication [Doc. No. 81]. The Court intimates no view regarding the merits of a bad faith claim based on Defendant's failure to pay such coverage.