IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRINITY BAPTIST CHURCH aka<br>TRINITY SOUTHERN BAPTIST CHURCH<br>aks PROVIDENCE CHURCH,<br><br>          Plaintiff,<br><br>v.<br><br>GUIDEONE ELITE INSURANCE<br>COMPANY, *et al.*,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  CIV-06-1201-D<br>)<br>)<br>)<br>)<br>) |

**O R D E R**

Before the Court is Plaintiff's Motion for Partial Summary Adjudication [Doc. No. 81], which seeks a determination as a matter of law pursuant to Fed. R. Civ. P. 56 of an issue of contract interpretation regarding the property insurance policy that is the subject of this case.  Defendant GuideOne Elite Insurance Company, which issued the policy, has opposed the motion.[1]  The parties have filed reply and surreply briefs.  The Motion is thus at issue.

**Undisputed Facts**

Plaintiff suffered a covered loss of its insured property at 1711 North Broadway Street in Moore, Oklahoma, due to a tornado on May 8, 2003.  The tornado was a "Covered Cause of Loss" as defined by the insurance policy.  The policy provided replacement cost coverage for a loss of insured property and extensions of coverage beyond the policy limits under certain circumstances. One such provision covered the increased cost attributable to the enforcement of building ordinances or laws, also referred to as code enforcement.  The terms of the provision are as follows:

---

[1] All references to "Defendant" in this Order mean GuideOne Elite Insurance Company.

**5.**     **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

*   *   *   *

i.     Ordinance or Law

If a Covered Cause of Loss occurs to covered Building property, and causes the enforcement of any ordinance or law that (a) is in force at the time the cause of loss occurs, and (b) regulates the repair or reconstruction of that building, or establishes zoning or land use requirements at the described premises, the most we will pay is $250,000 for any one of the following coverages or $500,000 for combination of coverages, subject to SECTION D. DEDUCTIBLE:

(1)     The actual loss resulting from the required demolition of the undamaged parts of that building,

(2)     The amount you actually spend to demolish and clear the site of the undamaged parts of that building; and

(3)     The amount you actually spend for the increased cost to repair or reconstruct that building.

The terms of this Extension of Coverage shall:

(1)     Apply separately to each covered building;

(2)     Not apply to any building that is not Covered Property;

(3)     Not apply to any covered building that has not been damaged by a Covered Cause of Loss;

(4)     Not apply to loss due to any ordinance or law that you were required to comply with, and that you failed to comply with before the loss occurred.

Pl.'s Mot. Partial Summ. J., Ex. 2 [Doc. 81-3] at 12, 15.  A "Covered Cause of Loss" occurred to

"covered Building property" and caused the enforcement of an ordinance or law then in force at the

time the loss occurred, and regulated the repair or reconstruction of that building, or established zoning or land use requirements at the premises, within the meaning of this provision.

Plaintiff presents a memorandum listing costs for certain "code items" that are the subject of a coverage dispute between the parties. Although unclear from the parties briefs, it appears that this list was generated during the appraisal process requested by Defendant pursuant to the policy. The list of items is accompanied by two columns of comments and numbers. Defendant agrees that the items for which a value appears in the left-hand column are covered by the "Ordinance or Law" extension, if the applicable codes are enforced and the expenses are incurred.[2] With one exception, Defendant takes the position that the items for which a value appears in the right-hand column are not covered, regardless whether other conditions to coverage are met.[3]

As framed by Defendant's response, primarily at issue as a matter of policy interpretation are the costs of parking lots and landscaping. Defendant contends such items are not "Covered Property" under the policy and, therefore, cannot be covered by a coverage extension under any circumstances. As to other items, Defendant asserts reasons for non-coverage based on facts surrounding Plaintiff's new construction: costs associated with increased square footage of the building, although needed to enlarge bathrooms and hall corridors for handicap accessibility without losing classroom space, allegedly are not covered because constructing a larger building was not contemplated by the policy but was a voluntary decision on Plaintiff's part; the cost of a range or

---

[2] Plaintiff did not rebuild at its old location but relocated to a property at 3800 South Broadway Street in Moore, Oklahoma. Defendant asserts that extended coverage is not triggered as to all of the items in the first column "because one code was not applicable at Plaintiff's former location, *see* discussion *infra* pp. 28-30 (concerning the range hood), and several are not applicable at the new location, *see* discussion *infra* pp. 30-33 (concerning reinforcement of CMU walls, etc.)." *See* Def.'s Resp. Pl.'s Mot. [Doc. No. 95] at 7-8. As explained below, these arguments exceed the limited scope of Plaintiff's motion.

[3] Defendant has conceded the availability of coverage for the item "Site Lighting and Signage." *See* Def.'s Resp. Pl.'s Mot. [Doc. No. 95] at 8.

vent hood for fire safety compliance allegedly is not covered because this item was needed only because Plaintiff decided to install a commercial oven, which did not exist in the original building; and the cost of foundation reinforcement allegedly is not covered because Plaintiff did not incur this item but instead elected to move to a new location and build a cement foundation, to which the code provision did not apply.

**Standard of Decision**

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.*

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. Although a district court has discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* at 672.

**Discussion**

**A.     Issue for Decision**

As an initial matter, the Court must identify the issue presented for decision. By its Motion and argument in its opening brief, Plaintiff requests a determination of "the issue of its entitlement to coverage for the [disputed items] under the 'ordinance or law' coverage extension in the policy." *See* Pl.'s Mot. Partial Summ. J. [Doc. No. 81] at 20. Because Defendant disputes in its response brief most of the facts presented by Plaintiff as material to its Motion, however, Plaintiff argues in reply that the Court should decide a narrower "legal issue of the scope of the 'ordinance or law' extension of coverage." *See* Pl.'s Reply Br. [Doc. No. 99] at 1. Further, Plaintiff does not address Defendant's arguments that particular items are not covered because they were not a result of code enforcement but result from Plaintiff's voluntary decisions to alter the original building.[4] Plaintiff instead contends that these arguments are foreclosed by the appraisal process because the appraisers agreed that all of the listed "code items" were required to comply with applicable ordinances or laws.

The Court disagrees with Plaintiff regarding the preclusive effect of an appraisal decision. Plaintiff relies on *Massey v. Farmers Ins. Co.*, 837 P.2d 880 (Okla. 1992), for the proposition that "the results of an appraisal are binding upon the party invoking the appraisal process."[5] *See* Pl.'s Reply Br. [Doc. No. 99] at 4. In *Massey*, the Oklahoma Supreme Court considered the effect of a "damage appraisal award." *Massey*, 837 P.2d at 882. The court observed that Oklahoma follows the majority view "that appraisal provisions permit appraisers or umpires to determine one issue,

---

[4] Plaintiff instead argues that any factual dispute regarding whether certain items were required by code enforcement "is misplaced and immaterial, in any event, to the central legal issue in this Motion." *See* Pl.'s Reply Br. [Doc. No. 99] at 4 n.3.

[5] The holding of *Massey* is that an appraisal award obtained under an appraisal provision mandated by Okla. Stat. tit. 36, § 4803, is not binding on a party who did not initiate the appraisal process.

5

to wit, the amount of damage to the property." *Id*. The court also observed that "appraisal awards generally cannot determine the cause of a loss and do not discharge a cause of action on the policy." *Id*. at 883.

In this case, the appraisal provision of the policy provides a process to resolve disagreements "on the value of the property or the amount of loss." *See* Pl.'s Mot. Partial Summ. J., Ex. 2 [Doc. No. 81-3] at 17. The parties did not agree that an appraiser or umpire would decide questions of contract interpretation or coverage. The provision expressly reserves the issue of coverage for decision by Defendant: "If there is an appraisal, we will still retain our right to deny the claim." *Id*. Therefore, the Court finds that, while the appraisement process may have resolved the amount of loss attributable to particular items, the appraisers did not reach a binding decision regarding which items were covered by the "Ordinance or Law" provision. The Court further finds that the summary judgment record is insufficient to determine that all of the disputed items were related to compliance with an applicable ordinance or law. Thus, the Court cannot decide as a matter of law the broad proposition urged by Plaintiff that coverage exists for the costs of all claimed code enforcement items.

Turning to the legal issue presented by the Motion, the Court understands that Plaintiff seeks a determination whether items that are not part of the covered "building," such as landscaping and parking lots, fall within the scope of the "Ordinance or Law" provision. Thus, the Court decides only this issue.

**B.      Analysis**

It is undisputed that the policy conditions are satisfied for the extension of coverage. "[A] Covered Cause of Loss occurr[ed] to covered Building property, and cause[d] enforcement of any ordinance or law that (a) [was] in force at the time the cause of loss occur[ed], and (b) regulate[d]

the repair and construction of that building, or establishe[d] zoning or land use requirements at the described premises." *See supra* at p. 2. Defendant does not contend that any limitations or qualifications stated in the "Ordinance or Law" provision apply. Thus, Defendant has agreed to pay: "The amount [Plaintiff] actually spend[s] for the increased cost to repair or reconstruct that [covered] building." *See supra* p. 2. In determining the scope of this agreement, the Court applies principles of Oklahoma substantive law.

**1.    Rules of Contract Interpretation**

The interpretation of an unambiguous contract is a matter of law for the Court. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 545 (Okla. 2003); *see Whitehorse v. Johnson*, 156 P.3d 41, 47 (Okla. 2007). Moreover, whether an insurance policy is ambiguous is also a question of law for the Court. *American Economy Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004). The determination of whether a contract is ambiguous is made only after applying the pertinent rules of construction. *See Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376-77 (Okla. 1991); *State ex rel. Commissioners of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987).

The Oklahoma statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*id*. § 163). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract is ambiguous if it is

7

reasonably susceptible to at least two different constructions." *Pitco*, 63 P.3d at 545-56. "The test for ambiguity is whether the language 'is susceptible to two interpretations on its face . . . from the standpoint of a reasonably prudent lay person, not from that of a lawyer.'" *Bogdahn*, 89 P.3d at 1054 (quoting *Cranfill v. Aetna Life Ins. Co.*, 49 P.3d 703, 706 (Okla. 2002)); *see also Dodson*, 812 P.2d at 376-77.

As explained more fully below, applying these rules of construction leads the Court to conclude that the "Ordinance or Law" provision is clear and unambiguous. Thus, the language of the policy is the only legitimate evidence of what the parties intended, which intent must be ascertained from a four-corners examination of the Agreement. *See* Okla. Stat. tit. 15, §§ 154, 155; *see also Pitco*, 63 P.3d at 545-46.

### 2. Parking Lots

Defendant contends the cost of parking lots that comply with applicable land use requirements is not covered because the policy expressly excludes paved surfaces from coverage in the "Property Not Covered" provision. Under Defendant's reading of the policy, the "Coverage Extensions" apply to an insured building and property within 100 feet of the premises "[e]xcept as otherwise provided," which reference reflects an intention to incorporate all other policy provisions. Defendant notes the "Property Not Covered" provision expressly refers to the "Coverage Extensions" with respect to other non-covered items and, thus by negative implication, does not intend paved surfaces to be covered by any "Coverage Extensions." Defendant also argues that constructing a parking lot is not part of repairing or reconstructing a building and so does not fall within the plain terms of its promise to pay.

The Court rejects Defendant's reading of the policy because it would render the "Ordinance or Law" provision almost meaningless, if not absurd. The proviso "except as otherwise provided"

cannot reasonably be read to incorporate the policy's definitions of covered and non-covered property into the promise to pay for increased costs of repair and reconstruction caused by applicable building codes and land use requirements.  Before a repair or reconstruction of a covered building becomes necessary, a covered loss has already occurred and the policy would already provide coverage for damage to covered property.  Further, the promise to pay, in addition to the replacement cost of the covered building, the increased costs attributable to a land use requirement could not be given effect if, as Defendant maintains, items connected to the land are never covered by the policy.  The more logical reading of the introductory language of the "Coverage Extensions" provision is that the listed extensions apply unless, within the provision itself, exceptions are stated.  In this regard, the "Ordinance or Law" section of the provision sets forth four qualifications to its terms; Defendant could have listed there an exception for parking lots, but it failed to do so.  Therefore, the Court finds the "Ordinance or Law" provision plainly requires payment for the cost of parking lots that are necessary to comply with applicable land use requirements for reconstruction of a covered building.

**3.     Landscaping**

Similarly, Defendant contends landscaping cannot be covered by the "Coverage Extensions" because landscaping is not covered by the policy and is not necessary to repair or reconstruct a building.  The Court disagrees with this position for the reasons explained above and based on the policy's express provision regarding "Property Not Covered."  The policy states that covered property does not include "land . . . , water or growing crops; or lawns, except as provided in the Coverage Extensions."  *See* Pl.'s Mot. Partial Summ. J. [Doc. No. 81-3] at 8.  Thus, the policy expressly indicates that land and lawns may be covered under one or more policy extensions.

**Conclusion**

Therefore, the Court finds that Plaintiff is entitled to a determination as a matter of law that the scope of the "Ordinance or Law" extension of coverage may require payment for landscaping and parking lots, if all other conditions to coverage are met.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Partial Summary Adjudication [Doc. No. 81] is GRANTED in part and DENIED in part as set forth herein.

IT IS SO ORDERED this 14th day of September, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE